LIU of Vaitogi, MULI of Ili'ili, POLOAI of Pava'ia'i,
TUA of Pava'ia'i, SALEMEANA'I FAMILY of Ili'ili,
SAGAPOLU of Ili'ili, FONOTI of Tafuga, Plaintiffs

v.

FAO of Ili'ili, Defendant

No. 12-1938

High Court of American Samoa

Civil Jurisdiction, Trial Division

[Land: "Lepuapua" near Tafuga]

February 24, 1939

ARTHUR A. MORROW, *Chief Justice;* LIUFAU, *Associate Justice.*

Heard at Fagatogo on January 10, 11, 1939,

For Fao—Chief Ufuti and Crossfield Hunkin
 Tua—Siafanua
 Fonoti—himself—Malauli second day only.
 Liu—himself assisted by Tavita
 Muli—Eti and Timu

Poloai—Ofoia
Salemeana'i family—Aumavae assisted by Vao
Sagapolu—Fe'a

### DECISION

The land designated Lepuapua on the survey hereinafter referred to was surveyed by Fao and, pursuant to Section 74 of the Codification, offered by him for registration as his property on July 7, 1938, the survey being filed with the offer to register. The land is located near the village of Tafuga. Liu, Muli, Poloai, Tua, the Salemeana'i family, Sagapolu and Fonoti each filed separate objections to the proposed registration.

At the trial it appeared from Fao's statement that he claimed the land as the communal family land of the Fao family. Each objector stated that that part of his or its land claimed by such objector to have been included in the survey was likewise communal family land.

The tract surveyed in November, 1937, is bounded on the east by the sea and extends inland to the westward a little more than a mile. It averages about a quarter mile in width, and contains 191 acres. Except for a small portion next to the sea, the 191 acre tract is practically all heavy bush land difficult to penetrate. Fao testified that he learned the boundaries of the land Lepuapua from Fao Sitoe on March 20, 1900, Fao Sitoe accompanying him over the land on that day and pointing out the boundaries to him. He also testified that there are two large stones in the bush near Pava'ia'i which are on the boundary line of Lepuapua. His testimony and the testimony of other witnesses indicate that these are the only two fixed markers in the entire boundary line surrounding the land, which, as

before stated, is practically all heavy bush except a small part near the sea. Fao stated that he had been over the land a number of times on hunting trips after 1900, but not after he had his leg cut off in 1932.

The surveyed tract has seventy-five (75) sides by actual count on the survey filed. There is only one fixed marker shown on the survey, it being a government cement base tripod signal which an examination by the Court at the time of the Court's visit to the land showed to have been broken into a dozen scattered pieces with only a small portion of the cement still adhering to the lava rock beneath it, and which small portion will in a short time doubtless disappear making it impossible to retrace the boundary as surveyed. The two large stones above-mentioned as being in the boundary line of Lepuapua are not shown on the survey, no doubt because, as the evidence showed, the surveyed tract does not quite reach to said stones.

Practically all of the boundaries must have been in heavy bush land in 1900 as they are now since it was apparent from the Court's inspection of the land and from the evidence that except for a small portion near the sea the land has never been cleared of bush.

That Fao could remember with any degree of accuracy the location of a great number of unmarked boundaries in heavy bush thirty years after he was shown the same on March 20, 1900—granted that Fao Sitoe knew where they were—is difficult to believe. Yet, if this land is to be registered as Fao land, this Court must believe that very thing, as will be later apparent from the decision. This Court judicially knows that the human mind is such that it is scarcely to be believed that he could have retraced accurately the boundaries through heavy bush, all of them unmarked except the one identified by the two stones, even as long as three months after he was shown the boundaries. Yet we are asked to believe that under the circumstances

he remembered accurately these boundaries after, not three (3) months, but after thirty years.

The evidence showed that prior to the making of the survey in November, 1937, a working party under the direction of Samia, a member of the Fao family, spent two or three weeks cutting a path through the bush along the boundaries of the surveyed tract so that a survey could be made following the path so cut. Fao directed Samia to have the path cut. According to the testimony this path made through the bush did not at all places follow the boundaries of the land Lepuapua as shown to Fao by Fao Sitoe. Fao told Samia to have the path cut along the north side of the surveyed area in a straight line for about a mile back from the sea in a direction that is westerly, then cut in a southerly direction staying within the confines of Lepuapua on the westerly side and then in a straight line on the south side in what appears by the survey to be an easterly direction, to the land of Salemeaga'i and thence by the land of Salemeaga'i back almost to the sea. Fao's directions were to have the path cut so as to make the land included within the path substantially a rectangle. We think from the evidence that it was Fao's intent to have the path cut so as not to take in any of the lands of adjoining land owners, several of whom are the seven objectors in this case. There is no reason to suppose that Samia did not try to follow Fao's directions as best he could. However, the measure of success that Samia had in cutting a straight path through the bush for a mile on the north side of the surveyed area is shown by an examination of the plat of the survey which followed the path. There are more than thirty boundaries shown on the north side and along the path, no two of which have the same direction. The bearings of these last mentioned boundaries range all the way from 303° 51′ clockwise from north to 224° 27′ clockwise from north. The boundary with the latter bearing comes within less

than eleven degrees of being at right angles with the boundary having the first described bearing.

Samia testified that he knew the boundaries of the land Lepuapua and that he cut the path so as not to have any of it outside of those boundaries. He received his information as to the location of the boundaries from Fao, Fao pointing them out to him while on a hunting trip in Lepuapua. The last time Fao, according to his own testimony, was on the land Lepuapua with Samia was in 1931, the year before Fao had his leg cut off. Samia stated that he went over the land with Fao before Fao had his leg cut off as before stated (it was cut off in 1932), and that he (Samia) was about eighteen or nineteen years old at the time. Samia also testified that he hadn't been over the land with Fao for seven or eight years which would make his last trip over the land with Fao six or seven years before the survey was made in November, 1937. Fao testified that on the abovementioned hunting trip he pointed out the same boundaries of Lepuapua to Samia that Fao Sitoe had pointed out to him thirty years before. It should be stated again that most of these boundaries were in heavy bush difficult to penetrate and with no markers to define them except the one marked by the two stones at the westerly end of the tract.

The testimony in favor of Fao on the boundaries in the bush comes down to this: On March 20, 1900, Fao Sitoe pointed out to Fao where the boundaries of Lepuapua were in this bush. Some thirty years later Fao while on a hunting trip in Lepuapua with Samia, an 18 or 19 year old boy, recalls the boundaries (unmarked except as to one with the two stones to define it) and points them out to Samia who, relying on what Fao had told him six or seven years before as to their location, cuts a path for the survey about two miles long through the bush and does it so accurately that he doesn't take in any land belonging to the adjoining land owners.

If Fao is to have the surveyed land registered as his family land, he must rely solely upon the testimony of Samia that Samia knew accurately the boundaries, unmarked, except one, in the heavy bush and that he cut the path so as to have it within those boundaries.

Fao admitted that he was not present when the survey was made and that he had never been over the cut path which the survey followed, except a small part near the sea on the day preceding the trial when the Court viewed the land. He could not, therefore, even admitting that he knew the boundaries of Lepuapua in the bush, know whether the surveyed area included some lands of adjacent land owners or not. That Fao didn't know whether land of other families was included in the surveyed tract is very clear from his own testimony. A portion of the transcript of the evidence taken when Fao was under examination reads:

"Q. All that you know is that your son told you that they didn't take in any of the neighbor's land, you don't know whether they did or not, do you?

A. That is correct.

Q. As far as you of your own knowledge are concerned, you don't know whether this surveyed tract includes the neighbor's land or not?

A. I didn't personally present at the time when the survey was running along but my son told me.

Q. All that you know about it is that your son told you that they didn't include any of the neighbor's land in the survey tract, is that correct?

A. That is right."

Samia is the son of Fao referred to in the quotation from the transcript.

It is very apparent that all Fao knew about whether lands other than his own family lands were included in the survey is based on what Samia told him after the path was cut, which of course, is just hearsay, and inadmissible as testimony.

46

The only other witnesses for Fao, besides Fao himself and Samia, were Faiivae and Tuia. Faiivae testified that he had been familiar with the land Lepuapua for over thirty years. But not having seen the path followed by the survey, he was not in a position to give admissible testimony bearing on whether or not the surveyed tract included some of the lands of the various objectors. He admitted that he did not know whether any of the neighbor's lands were included in the surveyed area or not. Since Fao by his own testimony was in no position to know, except through inadmissible hearsay from Samia whether the survey took in adjoining land of objectors and Faiivae gave no testimony bearing on the issue, Fao must, as before stated, rely solely upon the testimony of Samia that he cut the path so as not to have it, or any part of it, outside the boundaries of Lepuapua. Tuia's testimony was merely to the effect that the surveyed tract included no plantations. He was a member of the party making the survey.

To establish his title to the 191 acres offered by him for registration, Fao introduced testimony that the Fao family had been in possession of the land for a period antedating the establishment of the Government; that they had used that small part of the land which is not bush and by the sea for plantation purposes; that on rare occasions they had gotten timbers and bamboo from the heavy bush area on the tract; that they had taken arrowroot from a part of the land; also that Court Grant No. 843 to the executors of the Matthew Hunkin estate dated 25 March 1897 and recorded on pages 97 and 98 of the Register of Court Grants contains a recital indicating that land adjoining the land included in the Court Grant was the property of the Fao family. This recital on page 98 of the record reads as follows: "Also all that parcel of land situate in Tafuna aforesaid called 'Maafuaalomau' being land Claim No. 2797. Bounded on the East by Noa's land 300 links on the South

by the sea 265 links. On the West by family land. Bounded West North West 137 and 117 links by land of Lealaimatafau." It was in evidence also that Hunkin bought the land included in the Court Grant from Fao.

Samia, who is a member of the Fao family and who lived with the family and hunted with Fao on the land testified that he never saw Fao making any use of the surveyed tract except a small portion by the sea. Fao himself testified that he had taken timber, bamboo, arrowroot, lafala and coconuts from the land; that he had held the name Fao for forty-one years and that during that time the land had been in the possession of the Fao family; that there were no Fao graves within the surveyed tract, though there were in a part of the land Lepuapua not included in the survey; that Ufuti, Leao and Faleafine had gotten timbers from the land with his permission.

Fao's witness, Faiivae of Leone and fifty-nine years old, testified that in his 31 years acquaintanceship with Lepuapua, he knew of Fao getting timbers from it only twice and bamboo once. The timbers and bamboo were gotten from the bush part of Lepuapua. Faiivae stated that he was a member of Hunkin family having some land next to the land Lepuapua and that he had been in a position to know of the use Fao had made of Lepuapua. Faiivae stated that Fao had shown him while hunting the boundaries of Lepuapua. He also stated that he had not seen the path which the survey followed. It is obvious, therefore, that he could have no knowledge except through hearsay, as to whether or not the path was within the boundaries Fao pointed out to him.

It is apparent from the evidence that the Fao family had made very little use of any of the bush part of the surveyed tract, which part composes almost all of it.

We shall now pass to the testimony in behalf of the objectors, considering the case of each objector separately.

48

Mageo aged fifty-eight years of Pago Pago testified that he was familiar with the land Lepuapua. He also stated that Liu's land ran to a lonely coconut. This coconut was admittedly within the surveyed area. He also gave testimony that he himself had gotten timbers for fales from Lepuapua without permission or objection from Fao, and that Fao knew that he got the timbers; that Liu's family had gotten bamboo on many occasions from Lepuapua.

County Chief Letuli, a member of the Liu family and also the Fao family, testified that he was familiar with Lepuapua and the land Matautu belonging to the Liu family near Tafuga; that he had seen the path cut through the bush which the survey followed. Then he stated that a part of the land Matautu was included in the surveyed area. He also stated that members of the Liu family had taken timbers from land within the surveyed area, and that Fao had made no objections. Letuli testified that the land Matautu extended to the lonely coconut within the surveyed area, and that the Liu family to his knowledge had been taking arrowroot, lafala and timbers from the land around the lonely coconut for a long time. Letuli also stated that the surveyed area took in some lands of Muli, Sagapolu, Salemeana'i and Noa (Noa represented by Liu).

Judge Muli of Ili'ili testified that he had seen the path followed by the survey and was familiar with the surveyed tract; that it included some bush land of a tract called Vaieli belonging to him and Leituala; that his family had on many occasions taken timber from the part of his family land included in the survey, and also arrowroot and lafala; that such use of the land covered a period extending back before the establishment of the Government which was in 1900. It should be stated that Muli is fifty-four years old and was in a position to know of the use of lands by his family. He also stated that such use was without the permission or objection on the part of Fao; that he and Lei-

tuala had had the exclusive use of the part of the surveyed area claimed by him, and that Fao had made no use of it, and that if Fao had made any use of such land he was in a position to have known it.

Muli also testified that lands of Sagapolu, Tualevao, Tua, Liu and Noa were included in the surveyed area offered for registration. It appeared from his testimony that Muli was in a position to know the correctness of this last statement.

Leituala, forty-nine years old and also of Ili'ili, testified that he was familiar with Lepuapua, had seen the path followed by the survey and that the surveyed land included part of the land Vaieli, the property of Muli and himself; that the Muli family had used that part of Vaieli included in the surveyed tract for many years, taking timbers, arrowroot and lafala from it; that the Muli family's use of the land antedated the establishment of the Government; that Fao had made no objections to such use and had not used it himself.

Poloai, fifty-seven years old, of Pava'ia'i, testified that he was familiar with the land Lepuapua and had seen the path followed by the survey. That part of his land Leatuana was included in the Fao survey; that his family had been taking arrowroot, lafala and timbers from that part of Leatuana included in the survey since prior to the establishment of the Government; that such use was without objection on Fao's part and that he had never seen the Fao family making any use of such included land.

He also stated that the survey took in some of Tua's land and also some land of Liu and Noa. His testimony indicated that he was in a position to know the truth concerning the facts about which he testified.

Talolo, more than sixty years of age, of Vaitogi, testified that he was familiar with the land Lepuapua and had seen the path cut through the bush and followed in making

the survey; that he had been familiar for many years with the land Leatuana belonging to Poloai and that part of it was included in the survey; that the Poloai family had taken timber, lafala and arrowroot from that part for a period running back prior to the extablishment [sic] of the Government. He also stated that part of Tua's land was included in the surveyed tract.

Letele, forty-one years old, of Pava'ia'i testified that he saw the path cut for the survey; that he had been familiar with the land Tavaitutolu ever since he "was able enough to go about and look"; that Tavaitutolu was the property of Tua and that a part of it was included in the surveyed area; that the Tua family, to his knowledge, had taken timbers and other products from that part "from our forefathers and up to the present time.", that he had no knowledge of the Fao family having made any use of it.

Sagapolu, fifty-six years old, of Ili'ili, gave testimony to the effect that he had seen the path cut through the bush for making the survey; that part of his family land Aigalelei was cut off by the path so that it was included in the surveyed tract; that said part was bush land; that his family had made use of that part since prior to the establishment of the Government, taking timbers, arrowroot and lafala from it; and that such use was made without the permission or objection of the Fao. Sagapolu, who, according to his testimony, was in a position to know the facts, testified that parts of the lands of Salemeana'i, Noa and Liu, Tua and Muli and Leituala were included in the surveyed area.

Atualevao, probably sixty years old, of Ili'ili, stated on the stand that he was familiar with Lepuapua; that he had seen that part of the path for the survey which, he said, cut off a part of the land of the Salemeana'i family of which he is a member; that to his own knowledge his family had used that part ever since the Government was established tak-

51

ing therefrom lafala, arrowroot, timber and bark from fau trees growing on it; that Fao had made no objection to such use and had not given permission therefor; and that he had no knowledge of the Fao family ever having made any use of such part.

Fonoti, sixty-eight years old, of Tafuga, testified that he was very familiar with the land Lepuapua; saw the path being cut for the survey; went over the path; that it was cut so that a part of his family land was included in the surveyed area; that the part of his family land so included had plantations in it cultivated by his family ever since 1916; that his family had taken timber from that part so included for fales and that Fao had never made any objection to the cultivation by Fonoti's family of such plantations and that the use of such part was without Fao's permission. Fonoti also stated that his family land was adjacent to Tua's land and that a part of Tua's land was included in the survey.

As stated before in this decision, Fao's case as to the survey's not taking in any land other than Lepuapua rests solely upon the testimony of Samia who, when a boy eighteen or nineteen years of age and while on a hunting trip with Fao six or seven years before Samia cut the path, was shown the boundaries of Lepuapua by Fao who relied upon what Fao Sitoe had shown him as to their location more than thirty years before. It must not be overlooked that of the many boundaries of Lepuapua in the heavy bush only one was marked by markers, and that that one was at the westerly end of the tract more than a mile from the sea. That Fao could have remembered correctly the location of such numerous unmarked boundaries in the bush for thirty years would be a remarkable mental feat; that an eighteen or nineteen year old boy on a hunting trip could be shown the same unmarked boundaries in the bush and recall them accurately six or seven years later when he

52

cut the path for the survey is equally remarkable. Yet if we are to register the surveyed tract as Fao land we must believe that these remarkable mental feats actually occurred and at the same time disbelieve the testimony of Mageo, County Chief Letuli, District Judge Muli, Leituala, Poloai, Talolo, Letele, Sagapolu, Vao, and Fonoti.

All of these witnesses were much older than Samia. All of them were familiar with the land Lepuapua and other lands in its vicinity. Can it be that all of them were mistaken or consciously gave false testimony and that Samia alone was correct when he testified that the path cut through the bush and followed by the survey was cut so as not to go outside the boundaries of Lepuapua?

■ This Court must ascertain the facts from the evidence. There being a conflict in the evidence, the Court must weigh the testimony of the witnesses. Since Fao offered the surveyed tract for registration as his property the burden of proof under the law rested upon him. The burden was not on the objectors to show that he did not have the title to the land. We think that the weight of the testimony is with the objectors, not Fao, and that Samia was mistaken when he said that the path was cut so that it was entirely within the boundaries of Lepuapua. We believe that he acted in entire good faith both in cutting the path and in giving his testimony. However, in the light of all the evidence, (and it is our duty to consider the whole and not just a part of it) we believe that he was mistaken and that the path was outside the boundaries of Lepuapua at certain places.

The survey purports to show the ownership of lands adjoining the surveyed area. At the trial Fao admitted that the Noa family had land next to Hunkin and to the land he claims. But such adjacent land instead of being marked on the survey as Noa land was marked Fao. On the stand Fao was asked: "Who has land next to your land, as you claim,

and next to Hunkin?" He answered: "Noa's property, that is the one Liu is representing."

■ Since no part of any objector's land that may have been included in the surveyed area has been surveyed so as to be capable of definite identification, it is not possible to register any such unsurveyed part as the land of any objector. Since we have concluded that the survey as filed by Fao includes some unsurveyed lands not belonging to the Fao family it is not possible to register in this litigation any land included in the survey which the Fao family may own because there is no way of knowing without further surveys what land within the surveyed tract the Fao family may, or may not, own.

It should be pointed out that this is not a decision that the Fao family owns, or does not own, any land within the surveyed area; nor is it a decision that any particular objector does, or does not, own any specified land within the surveyed area. This decision is to the effect that the entire tract as shown on the survey cannot be registered as Fao family land, and that is the only thing decided.

It may very well be that the Fao family owns a portion of the surveyed tract offered by Fao for registration. There is evidence to that effect but what part, if any, cannot be determined definitely from the evidence in this case, or from the survey.

■ Section 74(3) of the Codification provides, among other things, that "No claim to land shall be admitted to registration . . . unless the description is sufficient to identify clearly the boundaries of the land . . . ." Of course the principal purpose of this requirement is to enable the land to be definitely identified at a later time in case of any dispute as to its location. It should be stated here that, as shown on the survey filed by Fao, it appears that the land offered for registration has some seventy-five boundaries. Only one marker, a government cement base tripod signal,

54

is indicated on the survey. That cement marker, as the Court observed when viewing the land prior to the trial and as before stated, has been broken into as [sic] least a dozen pieces scattered on the lava rock on which it was placed, there being only one small part of the marker still attached to said rock. Within a short period this remaining piece will with constant weathering doubtless go the way of the remainder of the marker, and with the breaking away of that piece it will not be possible to retrace the survey should a dispute arise and such become necessary. It is true that the land of Hunkin is shown on the survey as adjoining the surveyed tract for some five hundred and thirty-one feet on the three northwest boundaries nearest the sea, and presumably this is the land confirmed in the Hunkins by the Court Grant hereinbefore mentioned. However, an examination of the Court Grant as recorded shows that the bearings of the boundaries of the Hunkin land are not given but instead the land is described as bounded by the sea and the lands of various Samoan families, naming them, and "on the Northwest side by the bush land Lepuapua." Obviously the Hunkin grant record could not be of any assistance to a surveyor in retracing the survey after the above-mentioned piece of cement has become separated from the lava rock.

Unless some cement posts, or other permanent markers should be embedded in the boundary line and their location shown on the survey, it will be impossible in a few years to retrace the survey as filed. Under these conditions, the land as presently shown on the survey is not entitled to registration in view of the above quoted part of Section 74(3). However, this is a matter that could easily be remedied as above suggested.

Any objector, who may desire to have any land which his family may have within the surveyed tract registered, is free to have a survey of his land made and offer it for

registration. While each objector in this case introduced evidence of ownership of a portion of the land surveyed by Fao, nevertheless that portion, not having been surveyed, was not capable of identification by definite boundaries and therefore cannot be registered in this litigation. Fao is also free to have another survey of any land he may own made and offer the land as surveyed for registration.

Costs in the sum of fifty ($50) dollars are hereby assessed against Fao, the same to be paid within ninety (90) days.